Let me take a break after this one. All right, the next case of the afternoon is number 2450779, OSR Enterprises v. Ree Automotive. We'll hear from Mr. Lee. Thank you, Your Honor, and may it please the Court, Andrew Lee here on behalf of Appellants OSR Enterprises and OSR Enterprises AG, I've reserved five minutes for rebuttal. The District Court clearly abused its discretion by dismissing this case on Forum 9 convenes grounds. The District Court committed three fundamental errors that require reversals. These errors track the elements of FNC. First, the R&R misapplied the burden on adequacy and the Court misapplied Piper Aircraft. It found Israel to be an adequate forum, even though Israeli law cannot reach the very conduct at issue here. That being Ree's extraterritorial misappropriation and use of stolen trade secrets. Second, the District Court improperly limited its private interest analysis to the Western District of Texas rather than to consider the United States as a whole. This error led the Court to ignore material witnesses and evidence throughout the country. Third, the Court failed to properly assess public interests. The three defendant companies in this case all go by the name Ree. They want all of the benefits of doing business in the United States without the burden of American justice. It's important to note that Ree established U.S. subsidiaries. It went public on a U.S. stock exchange. It partnered with Texas and other U.S. manufacturers, and it markets its products extensively to U.S. customers. Ree declared Pflugerville, Texas, an Austin suburb, as its U.S. headquarters. And as Ree's own CEO admitted, we're in the U.S. all the time. That's what distinguishes this case from so many of the others that the courts have utilized to reject a plaintiff's choice of forum. The District Court's dismissal rewards Ree for engaging in the very conduct that the Fenn Trade Secrets Act, the DTSA, was designed to prevent, foreign misappropriation targeting U.S. commerce. This Court should reverse. I will turn first to the adequacy issue. The District Court's adequacy finding rests on at least two fundamental legal errors. First, the Court misapplied the burden, and it shifted it to the plaintiff, OSR. Second, the Court misapplied Piper and this Court's en banc decision in Aircraft Disaster to require only that Israel have some trade secret law, rather than asking whether Israel can provide a meaningful remedy for the specific harm alleged, the extraterritorial misappropriation of trade secrets in the United States. First, the misapplication of the burden. In Air Crash, this Court en banc recognized that the defendant bears the burden as to all elements, that being adequacy, availability, private interest factors, and public interest factors. Availability is not contested. Adequacy is. Yet, the R&R relieved Ree of this burden as to adequacy. I'm reading from page 10 of the magistrate's R&R. This is ROA 2636, quote, a magistrate judge, I apologize. On the facts presented, it is unclear whether OSR's unfair competition claim is viable in either Texas or Israel. And the questions raised about the viability do not show that the latter is inadequate. Remember the word unclear. And then at page 9, ROA 2635 on trade secrets. The Court finds that any uncertainty around the extraterritorial reach of Israeli courts does not rise to a showing that Israel is an inadequate forum. This language, these findings, put the burden of proving adequacy on the plaintiffs, OSR. But in DTEX, which the Court has throughout the briefs, cited by both parties, this Court explained the process. And the R&R turned that process on its head. Quoting from page 796 of DTEX, quote, though defendants must carry the burden of proving an adequate forum, they may rely on a presumption that the foreign forum is adequate. A plaintiff may overcome that presumption by making a contrary showing. And the plaintiffs did make such a showing here. We submitted declarations of an Israeli law expert that showed that Israel was an inadequate forum. The defendant, Ree, was at that point no longer able to rely on the presumption and had to shoulder its burden. But what the magistrate judge did by saying that she was unclear and uncertain was she elevated the showing to a burden, putting it on OSR, the plaintiff. This is the first part. I just have a question. I strongly doubt that the State of Israel has inadequate law. A lot of it derives from the U.S., some of it derives from Europe. It's a very forward-looking system of law. I've been on a number of forum nonconvenience cases where we sent cases to Mexico, to Europe, to India, and this question of adequate forum means basically are they going to get a fair shake on something. It doesn't have to be the same remedies, doesn't have to be the same legal regime. So I don't understand when your experts quibble about what's the limitations period and that kind of thing, I don't think that those kind of technical differences amount to inadequacy. I think you're trying to get it down to too granular a level. So your Honor, I appreciate that a technical quibble is not what this is about. It's about the DTSA and it's about extraterritorial reach to the conduct that we committed here. So the crux of this 93-page, 320-paragraph complaint is that we directed its activities to the United States. There are three defendants. Two of them are U.S. companies and they went public on NASDAQ. They refer to themselves jointly as REIT throughout all of their filings with the SEC. But all their witnesses are in Israel. 17 witnesses they identified in Israel. That goes to materiality and to private interest. I'm happy to address that. There's 55 witnesses identified throughout the United States by the plaintiff as being important. I thought the whole point was that the head of your research bureau downloaded all your documents and then sold them to REIT. That is the genesis of the trade secret misappropriation, but that's not the damage. The damage was done when REIT took that and commercialized it and is trying to sell it in the U.S. But they took it in Switzerland, right? They took it in Germany. Not in Israel. Right. So that's one of the misconceptions and one of the mistakes in the R&R is that all of the events happened in Israel. It actually happened in Germany. That's not contested that the events happened there. But the proper forum, the most appropriate forum, is the U.S. and particularly the Western District of Texas. And I'll touch on why the DTSA is the central part of this, and that is because Congress saw fit to enact the DTSA to address the expropriation and use of trade secrets within the United States. It doesn't matter where they came from. So when you have, for example, in Section 1837 of Title 18, the extraterritorial provision of the DTSA says that it applies where any act in furtherance occurs in the United States. The DTSA makes no distinction as to the plaintiff's citizenship. There are plenty of plaintiffs that bring DTSA claims in the United States when a defendant is exploiting their trade secrets within the country's borders. Now, turning the court's attention to a recent case, it's cited in our brief at Blue Brief page 27, the Motorola case from the Seventh Circuit, which addressed this specific question of the application of the DTSA to forum nonconvenience. And it reversed the district court, which refused to enact an extraterritorial injunction under the DTSA. And the Seventh Circuit said, no, that's just exactly what the DTSA is for, and cited Section 1837 as an act in furtherance. The other part was the scope of the injunction, and that's what is important here. And to your question, the scope of an injunction of the DTSA is not just the defendants. It's their partners, their manufacturing partners, their development partners. In this case, there are multiple of them. The record is replete with evidence of examples of they have entered into agreements with manufacturers throughout North America, including one in Texas called EAVX, because what they produce is a chassis to an electric vehicle. And then they partner with companies that have to integrate with that chassis. And so they have at least six or seven manufacturing agreements that they have promoted through press releases. And those are with companies throughout the U.S. and the Western Hemisphere. There's a couple of them in Canada. So that's why the reach should be where it is, which is in the United States. So back to the legal standard, and Your Honor touched on it in terms of remedy. And that is the PIPER language that, unfortunately, the R&R misapplied. PIPER establishes the standard that if the remedy is provided by the alternative form is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight. What happened with the R&R is that it became a binary exercise. If you have, if someone can establish that you have any remedy in Israel, then you have to bring your claim there. That's not what PIPER held. And that's not what Air Crash Disaster held. And in both of those, the adequacy showing requires an assessment of whether the plaintiff is deprived of meaningful remedies. And that's where the DTSA comes in. Without the extraterritorial reach, now, if Israel provided a law that provided for an extraterritorial reach, it's not about statutes of limitations, then I would have a harder argument. But it doesn't have anything that's a corollary to the DTSA. And so there's no ability of— What's extraterritorial here? Are you talking about the fact that you're enjoining a company that's headquartered in Israel from extraterritorially capitalizing on trade secret theft in the U.S.? Or is that extraterritorial that the U.S. companies are being enjoined around the world? I don't—  Extraterritorial— Sure. I mean, we're talking multi-territorial. It is multi-territorial. Under the DTSA, the statutory language is that the injunction, injunctive relief can be very broad, but it at least applies to the United States. So that's what you're after, is blocking them from doing anything in the U.S.? With very valuable trade secrets that we outline in the complaint that are of immense value. You don't want to block them in Israel? Well, the DTSA does have that ability. But the corollary of your question is that if we were forced to file the suit and bring it in Israel, we would be stuck with only the Israeli conduct. We would not have any ability, under their law, to reach outside. So under the facts of this case, the DTSA is necessary, and it's available, and it's enacted just for this very purpose. So with that, I'd like to turn to the private interest factors. The court need not reach the private interest factors if it agrees that the district court failed to properly apply the burdens and or the adequacy law under Piper and Ray Aircrash. But I will address them briefly. The district court erred in stating that it was only looking at the district, the Western District of Texas, versus the all-of-U.S. issue. And this is a point of some contention between the two sides' briefs. Reid contends that looking at Western District is enough, and so did the magistrate judge, but that's not the appropriate standard. The Fifth Circuit has not weighed in on this, but the Eleventh Circuit has, in Wilson v. Island Seas Investments, which we cited in our brief, and it explained in that case and held that the district court erred by limiting its analysis to the Southern District of Florida rather than considering the United States as a whole. That's a quotation at our blue brief number 19, page 19. So while Wilson is persuasive and not binding, it is directly on point. And the R&R's error is clear because it did not acknowledge that Rule 45 gives it nationwide subpoena power, they have statewide trials. No less than seven times the district court cited that it was not finding that any evidence was present within Austin, within the Western District of Texas, and that's the wrong standard. But if I might, the fact of the matter is it overlooked some extensive evidence that was submitted of connections between the defendants and their personnel and the Western District. For example, the facility in Pflugerville, Texas, 120,000 square foot, meant to employ 125 people. Well, it's not producing anything at the moment, is it? Correct. So we would be faulted if we waited too late, and we'd be faulted if we were going too soon. But they announced that they had raised the shell of the building, and that's in the record, and they announced that they were, and in fact their COO is resident in Austin. These two things are uncontested. They said that the Austin Integration Center with the shell is being stood up and the shell is complete. That's ROA 1583. The other thing is that re-paraded in their 17 witnesses and then had their CEO verify that, and that's at 1260, that there would be a hardship to them to travel to Texas to  verify. Lo and behold, Mr. Burrell, the CEO, submitted a LinkedIn post two weeks after his verification, quote, excited to be next week in Austin for Move America 2023, a trade show. That was on September 28th of 2023 while this action was pending, and that's at ROA 2066. So finally, with respect to the public factors, the magistrate judge miscalculated, if I could take some time for my rebuttal to touch on the public interest factors. This is a pretty simple one because you don't get to it unless the other two fail, but once you do, if you look at the public interest factors, there are five of them. She ruled that OSR wins on number three and number four, and that RE wins on number two and number five, and that number one was neutral. So it was a two-two tie, and the defendants bore the burden to prove that the public interest factors favored their side. So even under that math, we, that is plaintiffs, win on the public interest factors. So I will not go any further into that other than to say that the characterization of this case as an Israeli dispute is undermined and shown to be false by the multiple volume of evidence that shows that all of these footprints are all over the United States, they're over Canada, and not all in Israel. Thank you, Your Honor. Yes, sir. Thank you. We'll hear from Mr. Hancock. Yes, Your Honor. May it please the Court, counsel. My name is Brad Hancock, and along with Anthony Servin, Gabriel Godoy, Mark Davis, and Dena McKinney, we represent the reappellees. This Court is tasked with determining whether or not the magistrate judge erred and the trial court erred in determining that dismissal was appropriate, where the facts were that the parties are Israeli, that the trade secrets were Israeli trade secrets, that there are employment agreements with Israeli employees that were poached, and the majority of the material witnesses are located in Israel. We believe this task is an easy one. It's notable that under Piper and Gilbert, any change in substantive law is not given conclusive or even substantial weight. And this will come up through my argument. First we look at the availability of the forum. OSR concedes this. Turning to adequacy, there's a presumption of adequacy, which I don't think they argue against, but looking at Piper at 254, note 22, it's one of the most oft-quoted portions of Piper, where it talks about the shifting of the burden, where if you have parties that are amenable to service, the burden then shifts to the plaintiff to indicate that they have no remedy at all. We believe that burden did shift to plaintiffs, and they were unable to meet it. It turned upon whether or not they're deprived of all remedies, not just two strings from the rope. Deprived of all remedies or treated unfairly. Refocus the court on what remedies are in fact available. We turn to the opinions of Tamir Afori, an experienced intellectual property attorney and author, who said that OSR would have similar claims and remedies in Israel, citing the Commercial Tort Act of 99, and that this is applicable even as to third parties, finding that under the Civil Wrong Ordinance, there's joint liability as to the new employers, which Ree was. How would they enforce an Israeli judgment in the U.S.? They'd domesticate it and move forward in trying to enforce the judgment at that point. Would they do the DTSA at that point? I don't believe it would be DTSA, but again, that's just one strand of the threat. Israel doesn't have DTSA, but one of the things that Tamir Afori did say is that Israeli courts have regularly reached beyond their jurisdiction in extraterritorial relief, and he cites the Israeli opinions of Eisenman, Safecom, and Tom Shover. He says that this is also true with respect to unfair competition, the other thread they point to, that Israeli law actually gives more meat to a claim for unfair competition than mere trade secrets, but also the confidential information. So Israeli law actually exceeds what Texas and the United States were allowed. OSR's arguments instead focus not on the remedies that are available, but again, they focus on those two strands. And what evidence do they rely upon? Ordo was their expert. Ordo, in his opinion, and that's cited 2218 in the record, he says that at most, extraterritorial relief might be unavailable. He doesn't say conclusively that it is not. Same with respect to unfair competition. He says maybe, possibly, never arising to the Piper requirements, that it is not in fact available. Magistrate Judge Hightower looked at Israel as an adequate forum. She looked at cases that are legion on this issue with respect to finding that Israel is in fact adequate, turning to conflict kinetics, path to riches, and CCS. And under this court's decision under DTACS versus BBVA, that presumption is in fact a presumption that RE can rely upon. And any uncertainty, the magistrate judge said, any uncertainty about extraterritorial reach would not rise to a showing of inadequacy or a lack of remedy at all. This would be true as to unfair competition as well. Have there been any developments in the criminal investigation of RE in Israel? The only things that we have in the record are that the Department of Justice, and this is in the Burrell Affidavit or Declaration. I don't want to know what's in the record. I want to know the current status. I understand that what is happening now is the dismissal. I'm not aware of OSR appealing it at this point. But the Department of Justice is not, my understanding, pursuing. And I think that's significant. Also OSR turns to the issue of privilege in that action or those investigations and says that that and the Hamas war are in fact reasons why the court is inadequate. The court magistrate judge dealt with this, I think, quite swiftly, saying that the courts in terms of privilege, the Israeli courts are in the best position to handle issues with respect to privilege and whether or not any finding, whether it's with respect to culpability or something that exonerates these former employees, is admissible in Israel under Israeli law and that that court is in the best position to make that determination. And the mere investigation or criminal prosecution doesn't mean that the Israeli court is unavailable. Further respect to Hamas war, the court magistrate judge noted that it's a tragedy what's happening, that the conditions, however, are at best uncertain. And she had a return to jurisdiction clause should litigation of this dispute become impossible in Israel. Next, turning to private interest factors, magistrate judge Hightower said that they strongly support dismissal. She scrutinized OSR's largely two claims related to the location of non-party witnesses and the fact that discovery and code could be sent. She held that this contradicted OSR's own disclosures and that the facts pointed to Israel. She noted that in the complaint, the crux of the dispute is not use in the United States, that's with respect to ultimate end use consumers. In fact, it's tied to these poached employees in Israel that may have, or had stopped or may have, they alleged, taken intellectual property in Germany. But where did he take it? He took it to Israel, to his new employer, RE, in Israel for use in R&D in Israel and they sent a demand letter in Hebrew saying you're violating Israeli law. They sent that demand letter to my clients, RE, and they prosecuted them in Israel, finding apparently in the prosecution that Israel was adequate for that purpose. With respect to, the other issue with respect to code could be sent, Your Honor, in HW Technology versus Domino's, you noted that the location of the evidence is not superfluous. The location of the evidence in the Burrell Declaration is in fact that all documents related to R&D, all the financial records, everything related to the claims asserted in this case are in fact located in Israel, which is significant. And I think it also bears noting that of the cases I've reviewed for dismissal for FNC, I have not yet found a case where a magistrate judge allowed discovery and in fact engaged in discovery to determine whether or not the facts for a forum non-convenes dismissal were in fact appropriate. Looking at issues with respect to whether or not parties, non-parties, third parties were amenable to service, whether or not they were willing to testify, what the burdens would be on them with respect to any potential testimony. I'm sure the defendant is thrilled with that because you've been capitalizing on the stolen trade secrets during this period. That started two years ago, right? That's certainly what they allege, but I think, Your Honor, you raise a good point. In order to prevail on the merits, they'd have to do two things under Israeli law. They first would have to establish that these are in fact trade secrets. Are they trade secrets? Did they protect them adequately to merit protection? Number two, were they misappropriated? All the facts tied to misappropriation are tied to two places, either Germany, if it happened there, and Israel with respect to where they were taken. There's no misappropriation facts in the United States. And I think it's also notable that there's a misread of the R&R, the recommendation, when counsel suggests that Magistrate Judge Hightower did not in fact focus on anything beyond the district. It's legion throughout the R&R that she focused on geography. What she did is she zoomed out, first considered Germany, Canada, Switzerland, UK, the United States, and then the states. She didn't just focus on the district. She focused on the geography. And when you focus on that and look at the report and recommendation, you see that she did in fact zoom out, and there's nothing inappropriate with that, and it certainly doesn't arise to a clear abuse of discretion. She also focused upon compelling non-party witnesses to attend trial. She focuses on attendance, where in fact she looks at, and it's appropriate for a trial judge, to put a pin in a map and have a string for 100 miles and find out the subpoena power with respect to the court's power to compel witnesses to trial. I think it's notable that we have a number of cases that state, and I guess their position seems to be, we'll try this case on depositions, but DTACs versus BBVA, this court held that you don't force a trial on depositions. It's done by the trier of fact with respect to compelling witnesses to trial. They ignore that point. She also found that the language of the witnesses and the imposition of a deposit in Israeli court for damages was not significant to mean that the court of the private interest factors weighed in favor of keeping the case in the United States. And I hear counsel also mention that the primary relief they're seeking is injunctive relief, extraterritorial, that belies the complaint itself. In fact, what they're seeking is $2.6 billion in what? Damages. $2.6 billion. And they argue that one of the reasons that Israeli court was inadequate is because they didn't want to have to pay the deposit. Not that they couldn't or not that they wouldn't. And I think the magistrate judge found that to be instructive. Further with respect to the public interest under Bumgart, this court and the magistrate judge Hightower could have stopped there. However, magistrate judge Hightower went further. And again, this is not just magistrate judge Hightower, it's also Judge Albright who did his own de novo review of these facts, over 1,200 pages of the record, and adopted the R&R based upon his own review. And so to focus on the hardworking magistrate judge and suggest that she was alone on an island in determining the forum non-convenes dismissal we believe is inappropriate. But with respect to the public interest, OSR paid very little attention to this in their objections, in their briefing. Magistrate judge Hightower and Judge Albright considered them. Counsel said a few moments ago that he believed that the third and fourth factors were found in favor of OSR. I think that's also a misread of the report and recommendation where magistrate judge Hightower held that those factors are in fact neutral. And then turned to the second and fifth factors, being the burden on local juries and a local interest in the litigation, and she said that they weigh heavily in favor of dismissal for forum non-convenes, and found that fundamentally this is a dispute between Israeli companies over Israeli trade secrets allegedly misappropriated in Israel, focusing on the locus of the dispute as the courts typically do in the forum non-convenes context. They simply don't like the magistrate judge's balance in the way that she weighed the facts. And again, this court is reminded under Piper that magistrate judge Hightower and Judge Albright are given extreme flexibility in reaching determinations for dismissal for forum non-convenes. She did that, and she didn't ignore the facts. In fact, there's 17 pages of detailed review where she takes into consideration things about Pflugerville, notes that it's never been opened, notes that there's no certificate of occupation, notes that the parties, the material witnesses, and when you look at her language in discussing the 17 material witnesses from Ree, she says they're in Israel. In reviewing the non-party or third-party witnesses, and they say 55, they say 42, the number count changes, they're not focused on material witnesses, but she says they're witnesses, non-party or third-party witnesses, scattered across the United States, scattered across the globe, including places like Canada and the UK, and in other states. Again, not just focusing on the district. But with respect to those witnesses that OSR identifies in the district, she says even those ones are beyond that string, 100-mile radius of compulsory attendance for trial. OSR's best argument for that is not that they're willing witnesses, but they will pay for the cost, the travel for the witnesses in the district. And so those four or five witnesses, they'll pay for the cost of travel. We believe, ultimately, the magistrate judge reasonably found, after conducting discovery and doing an exhaustive review, that this case has a locus in Israel similar to what we've seen in the cases including Piper, Baumgart, Sandra Sacqui, and others, where the focus is on where was the misappropriation, where was the crash, where was the injury, all of which occurred in Israel in this case. And I will note, under Piper, Baumgart, and Sandra Sacqui versus Pride Central, there was an investigation in those cases. The evidence here shows there has been an investigation, Justice Jones, as you note, that was initiated by OSR in each of those cases where there was an investigation. The case was appropriate for dismissal for forum non-convenes because, in fact, that the nexus continues to tie back to Israel. And again, who started the investigation? OSR. The fact witness that conducted the investigation was a company called TICTAC, hired by OSR in Israel to do the investigation in Israel. And again, we'd ask the court to affirm the decision. And unless there are any further questions, I would receive the remainder of my time. No, sir. No questions. Thank you. Thank you, Your Honor. Mr. Lee. Yes, thank you, Your Honor. I want to touch first on the public interest because I ended with that and my friend addressed it and he said that the court found that the third and fourth factors were neutral. This is from page ROA 2641. This is the magistrate judge's language. RE has not met its burden to show that the third and fourth factors weigh in favor of dismissal. RE didn't meet its burden on third and fourth. That means they flow in OSR's direction. So what you have is two that they met, two they failed to meet, and one is neutral. They cannot possibly win on public interest, even under the magistrate judge's analysis, if they can't meet their burden on more than two of the factors. Wait a minute. The prior paragraph says the court finds the first factor, court congestion, to be neutral.  Then it goes on, the court reaches the same conclusion as to the third and fourth factors. So how is that a finding that they didn't meet, a finding that REE didn't meet its burden is not a finding that those factors weigh in favor, in your client's favor. It's just, she's just saying they didn't meet their burden to shift them their way. I find them to be neutral, just like the first factor. So the end of the paragraph that you read the first sentence from is what I read, right? And I'm just suggesting that if they bear the burden to establish the public interest factors, favor their position, the magistrate judge found they didn't meet the burden on two of those factors. Right, but that doesn't mean that she didn't find that those factors were neutral and just focused on the second and fifth factors. Perhaps there is some confusion about what those come down as, because with respect to the congestion issue, she just said they're neutral and didn't say one or the other failed to meet burden. But I understand your point, and I understand that the better point about public interest factors goes to the question of the application of DTSA. Are we going to jettison it, drop it, decide that a foreign plaintiff can't come into a U.S. court and try to stop what Congress has said it has the right to stop? So I'm not going to rest the case on the tally. It's just notable. But going backwards to the private interest factors, what my friend failed to mention is that while we're talking about these 17 employees that they have control over, that they are suggesting are not amenable to compulsory process in the United States, even though there are cases that we've cited that say that that preference or that doesn't apply so much as to party witnesses, as in employees, as it does to true non-party witnesses. Setting that aside, what they do not discuss is that whatever number of witnesses there are scattered throughout the United States, and they have at least eight employees in the United States, those folks can't be compelled to go to Israel. There will be no testimony, no evidence collected from U.S.-based, Canada-based witnesses because Israel is a signatory to the Hague Convention, Article 23, which says that it will not take discovery out against other countries or permit discovery. So there's no way that a few dozen of the witnesses will participate in a proceeding in Israel in this situation, and that's significant in digesting the private interest factors. And that analysis goes down to a single question. Where can the parties most easily access proof and witnesses? And when third-party witnesses are clustered within the United States, when only the U.S. courts wield compulsory process over them, which is nationwide, and when we chose to center its commercial life here, they set up what they call a headquarters in Austin, then the answer should be obvious, that this is the most appropriate forum and that Israel is not adequate. If I could add to the factual basis for this, at ROA 1660, their CEO on July 23rd of 2023, while this case was pending, in a press release said, establishing our U.S. headquarters in Austin, Texas, best positions us for growth and rapid expansion. This is one of dozens of examples of where they tout their U.S. presence. They don't say, we're talking now about the re-U.S. companies, not the re-R&D in Israel. They say re. They talk about the publicly held NASDAQ-listed company. Finally, as to adequacy, the words in the magistrate judge's opinion are unclear and uncertain. That cannot be a basis for a finding that the Israeli forum is adequate. I see my time is up. Thank you, Your Honor. Okay. Thank you for adhering to the limits. All right. The court will stand in recess for 10 minutes. All rise.